**FILED**

Oct 20 2016, 8:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Aaron T. Craft
Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Tyson Timbs and a 2012 Land Rover LR2,<br>*Appellees-Defendants.* | October 20, 2016<br><br>Court of Appeals Case No.<br>27A04-1511-MI-1976<br><br>Appeal from the Grant Superior Court 1<br><br>The Honorable Jeffrey D. Todd, Judge<br><br>Trial Court Cause No.<br>27D01-1308-MI-92 |

**Mathias, Judge.**

[1] The State of Indiana filed a complaint for forfeiture in Grant Superior Court seeking to obtain a 2012 Land Rover LR2 owned by Tyson Timbs ("Timbs"). The trial court ruled in favor of Timbs, and the State appeals, presenting one

issue, which we restate as whether the trial court erred in concluding that forfeiture of Timbs's vehicle would constitute a constitutionally excessive fine.

We affirm.

## Facts and Procedural History

In January 2013, Timbs purchased a Land Rover LR2 ("Land Rover") for the sum of $42,058.30 from a dealer in Indianapolis. Timbs paid for the Land Rover with life insurance policy proceeds that he received following the death of his father. Thereafter, Timbs began to use this vehicle to drive from Marion, Indiana to Richmond, Indiana for the purposes of purchasing heroin. Timbs also used the Land Rover to transport the heroin back to Richmond.

In May 2013, a confidential informant ("CI") told a member of the Joint Effort Against Narcotics ("JEAN") team[1] that he could purchase heroin from Timbs. The police then set up a controlled buy, and on May 6, 2013, an undercover detective and the CI met Timbs at an apartment.[2] The detective gave the CI the purchase money, and the CI went inside the apartment with Timbs and returned with two grams of heroin that he had purchased for the previously agreed-to price of $275.

---

[1] The JEAN team is composed of members from the Grant County Sheriff's Department, the Grant County Prosecutor's Office, and the Marion Police Department.

[2] This apartment was apparently not Timbs's residence. *See* Tr. pp. 27-28.

[5]     The police set up another controlled buy on May 22, 2013, to take place at a local gas station. This time, the undercover detective purchased two grams of heroin from Timbs for a price of $260. After this transaction, the detective spoke with Timbs about arranging yet another purchase of heroin. However, on the day this controlled buy was set to take place, the police instead apprehended Timbs during a traffic stop.

[6]     On June 5, 2013, the State charged Timbs with two counts of Class B felony dealing in a controlled substance and one count of Class D felony conspiracy to commit theft. On August 5, 2013, the State filed a complaint for forfeiture, seeking to obtain Timbs's Land Rover.

[7]     On April 12, 2015, Timbs entered into a plea agreement with the State whereby he agreed to plead guilty to one count of Class B felony dealing in a controlled substance and Class D felony theft in exchange for the State dismissing the remaining charges. The following day, the trial court accepted the plea and sentenced Timbs pursuant to the agreement to six years, with one year executed in community corrections and five years suspended to probation. Pursuant to the plea agreement, Timbs also agreed to reimburse the JEAN team $385 for the cost of the investigation and pay a drug abuse, prosecution, and interdiction fee of $200; court costs of $168; a bond fee of $50; and a $400 certified court program fee after undergoing a drug and alcohol assessment with the probation department. The complaint for forfeiture remained pending.

On July 15, 2015, the trial court held a hearing on the forfeiture complaint. At the hearing, Timbs argued that forfeiture of his Land Rover, which he claimed was worth over $40,000, constituted an excessive fine, given that he had only dealt drugs twice, that he was only convicted for one count of dealing, and that the maximum statutory fine for his crime was $10,000. The trial court took the matter under advisement and, on August 28, 2015, entered an order in favor of Timbs, which provided in relevant part:

> 7.    The State now seeks a judgment against the Defendant for forfeiture of the Land Rover; a vehicle that just five (5) months before it was seized had a fair market value of almost four (4) times the maximum monetary fine of $10,000.

> 8.    The Court finds that the judgment of forfeiture sought by the State violates the Excessive Fines Clause of the Eighth Amendment of the United States Constitution. The amount of the forfeiture sought is excessive and is grossly disproportional to the gravity of the Defendant's offense.

> 9.    While the negative impact on our society of trafficking in illegal drugs is substantial, a forfeiture of approximately four (4) times the maximum monetary fine is disproportional to the Defendant's illegal conduct.

> Judgment is entered in favor of the Defendant and against the State.  The Land Rover LR2, at issue, is ordered released to the Defendant immediately.

Appellant's App. pp. 15-16. The State filed a motion to correct error on September 14, 2015, claiming for the first time that the trial court should have

ordered a sale of the Land Rover from which a non-excessive fine could be deducted.[3] The trial court held a hearing on the State's motion to correct error on October 14, 2015, and entered an order denying the State's motion on October 21, 2015. The State now appeals.

## Standard of Review

[9] At trial, the State bore the burden of establishing the requirements of forfeiture. *See* Ind. Code § 34-24-1-4(a). Thus, the State is appealing from a negative judgment. *See Merrillville 2548, Inc. v. BMO Harris Bank N.A.*, 39 N.E.3d 382, 390-91 (Ind. Ct. App. 2015), *reh'g denied*, *trans. denied*. On appeal, we will not reverse a negative judgment unless it is contrary to law. *Id.* Here, the State argues that the trial court erred in determining that the forfeiture of the Land Rover constituted an excessive fine. This court has held that forfeitures are subject to the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. *$100 and a Black Cadillac v. State*, 822 N.E.2d 1001, 1011 (Ind. Ct. App. 2005), *trans. denied* (citing *Austin v. United States*, 509 U.S. 602, 609-10 (1993)).[4] We review the trial court's conclusion regarding the

---

[3] The State does not reiterate this claim on appeal, and even if it did, it is well settled that an issue may not be presented for the first time in a motion to correct error. *Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind. Ct. App. 2002).

[4] The State claims that there is a question as to whether the Excessive Fines Clause of the Eighth Amendment is applicable to the states via the Fourteenth Amendment. The United States Supreme Court has yet to hold that the Excessive Fines Clause is applicable to the States. *See Browning-Ferris Indus., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 276 (1989) ("We shall not decide whether the Eighth Amendment's prohibition on excessive fines applies to the several States through the Fourteenth Amendment."). But this court held in *$100 and a Black Cadillac* that the Excessive Fines Clause did apply to Indiana's forfeiture statutes. 822 N.E.2d at 1011. We see no reason to disagree with our prior opinion. We also note that the Indiana Constitution contains its own provision against excessive fines. *See* Ind. Const. art. 1, sec. 16 ("Excessive fines shall not be

excessiveness of a fine *de novo*. *United States v. Bajakajian*, 524 U.S. 321, 336 (1998).

## Discussion and Decision

> In rem forfeiture is an ancient concept under which courts obtained jurisdiction over property when it was virtually impossible to seek justice against property owners guilty of violating maritime law because they were overseas. Civil forfeiture traces to ancient Roman and medieval English law; both made objects used to violate the law subject to forfeiture to the sovereign. Civil forfeiture is no longer tethered to difficulties in obtaining personal jurisdiction over an individual. It now serves as one of the most potent weapons in the judicial armamentarium[.] Civil forfeiture is a leading method for imposing economic sanctions against narcotics traffickers.
>
> Today, all states have statutory provisions for some form of asset forfeiture, and there are more than four hundred federal forfeiture statutes relating to various federal crimes. An important feature of many of these statutes is characterization of the process as civil forfeiture under which (by contrast to criminal forfeiture) a property owner need not be found guilty of a crime—or even charged—to lose permanently their cash, car, home or other property. The relative ease of effecting such forfeiture and the disposition of the assets have become a matter of public note.

*Serrano v. State*, 946 N.E.2d 1139, 1141 (Ind. 2011) (citations omitted).

[10] The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.

imposed). Because neither side addresses the Indiana Constitution, we base our opinion on the federal Excessive Fines Clause.

Const. amend. VIII. At the time the Constitution was adopted, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *$100 and a Black Cadillac*, 822 N.E.2d at 1011 (quoting *Bajakajian*, 524 U.S. at 327). Accordingly, the Excessive Fines clause of the Eighth Amendment "limits the government's power to extract payments, *whether in cash or in kind*, as punishment for some offense." *Id.* (quoting *Bajakajian*, 524 U.S. at 328) (emphasis added) (internal quotation marks omitted). As noted above, this court has already held that forfeitures in Indiana are subject to the Excessive Fines Clause. *Id.* (citing *Austin*, 509 U.S. at 622).

[11] To determine whether a fine or forfeiture is "excessive," for purposes of the Excessive Fines Clause, we consider whether the amount of the forfeiture bears "some relationship to the gravity of the offense that it is designed to punish." *Id.* (quoting *Bajakajian*, 524 U.S. at 334). A punitive forfeiture violates the Excessive Fines Clause "if it is grossly disproportional to the gravity of a defendant's offense." *Id.* (quoting *Bajakajian*, 524 U.S. at 334).[5]

[12] Here, there is no question that the nature of Timbs's offense was serious. He committed a Class B felony. However, our General Assembly has determined that a Class B felony should be punishable by a maximum fine of $10,000. Here, the evidence before the trial court was that Timbs's vehicle was worth

---

[5] The State claims that the Supreme Court in *Bajakajian* "allow[ed] a forfeiture three times the applicable fine" of $5,000. This is incorrect. The Supreme Court was abundantly clear that the only question before it was whether forfeiture of the *entire* amount of cash at issue, $357,144, was proper. *See Bajakajian*, 524 U.S. at 339 n.11.

approximately *four times* the amount of the maximum fine. Although we do not suggest that forfeiture of any asset valued over the maximum fine is automatically a violation of the Excessive Fines Clause, it is instructive to our analysis that the value of the asset sought by the State is well in excess of the maximum fine. Moreover, it is undisputed that the Land Rover was not purchased with the proceeds of any criminal behavior; it was purchased with life insurance proceeds.

[13] The State notes that an asset may be forfeited even if the State does not convict the owner of the criminal charge. *See Katner v. State*, 655 N.E.2d 345, 348 (Ind. 1995) (noting that a conviction on the underlying criminal activity is not a prerequisite for forfeiture). Thus, the State argues, it could have sought forfeiture of the Land Rover even if Timbs had not been convicted. However, this does not negate the fact that our General Assembly has set the maximum fine for the crime for which Timbs was convicted at $10,000, whereas the value of the Land Rover was upwards of $40,000.

[14] We also note that financial burdens had already been imposed on Timbs when he pleaded guilty. Pursuant to his plea agreement, Timbs agreed to reimburse the JEAN team $385 for the cost of the investigation and pay a drug abuse, prosecution, and interdiction fee of $200; court costs of $168; a bond fee of $50; and a $400 certified court program fee. Notably, the trial court imposing the sentence found no need to impose *any* fine, much less the maximum fine of $10,000.

The State also argues that the evidence before the trial court was that Timbs committed criminal acts other than the one for which he was convicted. This may be true. However, the complaint for forfeiture referred only to May 31, 2013.[6] If the State wished to seek forfeiture of the Land Rover based on Timbs's other criminal acts, it should have done so more clearly in its forfeiture complaint. Moreover, even considering these other acts, we note that the only evidence before the trial court was that Timbs sold heroin twice, both times as a result of controlled buys. The remaining times he transported heroin, it was apparently for his own use. The trial court was free to consider these circumstances in making its determination.

We also find the State's citation to *United States v. Aleff*, 772 F.3d 508 (8th Cir. 2014), to be unpersuasive. In *Aleff*, the defendants were convicted of conspiracy to defraud the federal government and ordered to pay almost $304,000 in restitution. Thereafter, the federal government brought suit against the

---

[6] The complaint set forth in relevant part:

1. On or about May 31, 2013, officers of the Plaintiff, J.E.A.N. Team Drug Task Force, seized from the Defendant, TYSON TIMBS, One (1) 2012 Land Rover LR2 . . . in Grant County, Indiana.

2. On said date and at said place, the Defendant, TYSON TIMBS, had in his possession, the above described vehicle, said vehicle had been furnished or intended to be furnished by Defendant, TYSON TIMBS, in exchange for an act that is in violation of a criminal statute, or used to facilitate any violation of a criminal statute or is traceable as proceeds of the violation of a criminal statute under Indiana Law, as provided in I.C. 34-24-1-1.

3. The Defendant, TYSON TIMBS, is the owner of the vehicle.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for forfeiture of vehicle, for the delivery of said vehicle upon forfeiture as provided for in I.C. 34-24-1-1, for reimbursement of law enforcement costs as provided by statute, and for all other relief just and proper in the premises.

Appellant's App. p. 14.

defendants under the False Claims Act, and the District Court awarded the government treble damages and statutory penalties of over $1,300,000. On appeal, the Eight Circuit Court of Appeals held that this was not grossly disproportionate under the Excessive Fines Clause. *Aleff*, 772 F.3d at 512-13. In so holding, the court noted that the defendants' scheme to defraud the government was extensive and took more than six years. *Id*. at 513. The defendants "received $303,890 from the public fisc to which they were not entitled," and the government "suffered damage to the integrity of one of its programs." *Id*. More importantly, the damages recovered by the government were within the limits of damages allowed by the False Claims Act. *Id*.

[17]     The present case is readily distinguishable from *Aleff*. Timbs did not engage in a years-long scheme to defraud the State, nor did the State here seek to recover treble damages under a false claims statute. It instead sought to forfeit a vehicle that was not purchased with the proceeds of Timbs's crimes. Here, the value of the asset subject to potential forfeiture was well over the statutory maximum fine, whereas in *Aleff*, the damages were more than the actual damages but still within the statutory maximum allowed under the False Claims Act.[7]

---

[7] The same holds true for the State's citation to *United States v. Mackby*, 339 F.3d 1013 (9th Cir. 2003), which was also brought under the False Claims Act. The total damages awarded in that case were within the statutory limits and the government was directly defrauded. *Id*. at 1018. Although the amount awarded, $729,455, was much greater than the $58,151 sought by the government, the defendants had filed fraudulent Medicare claims for which they received payment of $331,078. *Id*.

## Conclusion

[18] Forfeiture of the Land Rover, which was worth approximately four times the maximum permissible statutory fine, was grossly disproportionate to the gravity of Timbs's offense. We therefore affirm the trial court's conclusion that forfeiture of the Land Rover violated the Excessive Fines Clause of the Eighth Amendment.

[19] Affirmed.

Vaidik, C.J., concurs.

Barnes, J., dissents with opinion.

| | |
|---|---|
| State of Indiana, | Court of Appeals Case No. 27A04-1511-MI-1976 |
| *Appellant-Plaintiff,* | |
| v. | |
| Tyson Timbs and a 2012 Land Rover LR2, | |
| *Appellees-Defendants.* | |

**Barnes, Judge, dissenting.**

I respectfully dissent. I realize that my colleagues point to the allegedly "disproportionate" nature of the forfeiture sought by the State here. I understand their concern. I would simply say as follows:

Forfeitures are constitutional and, although some have been found to be excessive, are a useful law enforcement tool. *See U.S. v. Ursery*, 518 U.S. 267, 290, 116 S. Ct. 2135, 2148 (1996).

We have ruled that, in limited situations, the Excessive Fines Clause of the Eighth Amendment may come into play in a forfeiture case. *See $100 and a Black Cadillac*, 822 N.E.2d at 1011-12.

However, it is clear and without conflict in the evidence that the vehicle here was Timbs's and was used to facilitate crime, i.e., to transport Timbs to the

place of an arranged heroin buy. The vehicle did not have only a tangential relationship to the crime or to the defendant. It should not matter that Timbs committed the crime using an expensive new Land Rover rather than an old, inexpensive "beater."

The majority correctly points out that the record reflects Timbs "only" sold heroin twice. I simply posit that Timbs was arrested before the third buy could take place, and we are left to wonder how much heroin he had access to.

I am keenly aware of the overreach some law enforcement agencies have exercised in some of these cases. Entire family farms are sometimes forfeited based on one family member's conduct, or exorbitant amounts of money are seized. However, it seems to me that one who deals heroin, and there is no doubt from the record we are talking about a dealer, must and should suffer the legal consequences to which he exposes himself.

Timbs dealt heroin and got caught. I vote to reverse the trial court's denial of the State's forfeiture request.